IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CALVIN NORMAN, *Individually, and on Behalf of Estate of Ella Norman*, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 3:20-cv-03022-L |
| DALLAS TEXAS HEALTHCARE LLC d/b/a Skyline Nursing Center, and OASIS HEALTHCARE PARTNERS, LLC, | § § § § § | |
| Defendants. | § § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court in this removed civil action is Defendants Dallas Texas Healthcare LLC d/b/a Skyline Nursing Center and Oasis Healthcare Partners, LLC's (collectively, "Defendants") Motion for Judgment on the Pleadings (ECF No. 35). The District Judge referred the Motion to the United States Magistrate Judge for proposed findings and a recommendation for disposition pursuant to 28 U.S.C. § 636(b) and an order of reference. Order (ECF No. 37). For the reasons stated, the Magistrate Judge recommends the Court GRANT the Motion in part and DISMISS Plaintiff's ordinary negligence claims.

## Background

Ella Norman died on April 11, 2020—after contracting COVID-19 at Skyline Nursing Center, a skilled nursing facility owned and operated by Defendants. Orig.

Pet. 3-5 (ECF No. 1-1); Am. Answer 2-3 (ECF No. 34). Ms. Norman's son, Plaintiff Calvin Norman, filed this wrongful death and survival action in Texas state court, asserting claims against Defendants for (i) medical negligence, (ii) corporate negligence, and (iii) gross negligence. Orig. Pet. 5-12. He seeks damages resulting from any alleged breach of duty or undercapitalization of Skyline that proximately caused Ms. Norman's injuries. Orig. Pet. 12.

In his petition, Plaintiff alleges that his mother lived at Skyline for approximately five years. Orig. Pet. 3. Ms. Norman suffered from a variety of physical and mental conditions, including:

> [A]bnormalities of gait and mobility[;] schizoaffective disorders[;] essential primary hypertension[;] chronic kidney disease, stage 3[;] major depressive disorder, recurrent, unspecified[;] unsteadiness on feet, unspecified lack of coordination, muscle wasting and atrophy, not elsewhere classified[;] unspecified asthma, uncomplicated[;] Alzheimer's disease, unspecified[;] localized osteoporosis[;] tremor, unspecified[;] muscle weakness generalized[;] unspecified dementia without behavioral disturbance[;] bradycardia unspecified[;] difficulty in walking[;] and dysphagia, oropharyngeal phase.

Orig. Pet. 3. Defendants allegedly represented to Plaintiff that Skyline "was able, knowledgeable, and sufficiently staffed to adequately care for [Ms. Norman] and her conditions," particularly in relation to the "increased risk and susceptibility to viruses created by [her] conditions." Orig. Pet. 3. And Plaintiff alleges he relied on Defendants' representations in choosing Skyline to care for Ms. Norman. Orig. Pet. 3.

On March 13, 2020, Plaintiff called Skyline to speak with his mother, but he was unable to reach her. Orig. Pet. 4. The next day, Plaintiff contacted reception,

where he was informed by a nurse that she could not reach Ms. Norman because the hallway was blocked, and that he would have to speak to the Skyline director about seeing his mother. Orig. Pet. 4-5. After speaking with the director, Plaintiff learned that Ms. Norman had been moved to Methodist hospital because she had a fever that had persisted for more than four days. Orig. Pet. 5. On April 7, 2020, Ms. Norman was placed on a ventilator due to organ failure caused by COVID-19. Orig. Pet. 5. Four days later, she passed away. Orig. Pet. 5.

On August 14, 2020, Plaintiff filed this lawsuit; and on October 1, 2020, Defendants filed their Answer denying all claims and removed the case to federal court on the basis of diversity jurisdiction. Notice Removal 1-4 (ECF No. 1); Notice Removal, Ex. B, at 4 (ECF No. 1-2).

Ten months later—on June 14, 2021, the Texas Legislature enacted the Pandemic Liability Protection Act (PLPA). The PLPA added new provisions to the Texas Civil Practice and Remedies Code that included new elements required for, and defenses to, claims relating to pandemic diseases. Act of June 14, 2021, 87th Leg., R.S., ch. 528, 2021 Tex. Gen. Laws, S.B. 6, § 2. Among other things, the PLPA added section 74.155 to the Texas Civil Practice and Remedies Code which shields health care providers from liability for their negligence—but not their "reckless conduct" or "intentional, wilful, or wanton misconduct"—resulting in injuries or death arising from their care, treatment, or failure to provide care or treatment, related to a "pandemic disease." Tex. Civ. Prac. & Rem. Code § 74.155(b). These provisions applied to "an action commenced on or after March 13, 2020, for which

3

a judgment has not become final before the effective date of this Act." Act of June 14, 2021, *supra* § 5.

Thereafter, Defendants sought, and were granted, leave to amend their Answer. Mot. Leave (ECF No. 32); Order 1 (ECF No. 33). Defendants' Amended Answer included the newly available defense under section 74.155 of the PLPA. Am. Answer 11-13 (ECF No. 34).

Defendants now move for judgment on the pleadings. Mot. J. Pleadings (ECF No. 35). They argue that the PLPA bars all of Plaintiff's claims against them. Specifically, Defendants contend Plaintiff's negligence claims, as alleged, fall squarely within the scope of section 74.155, and Plaintiff has not sufficiently alleged reckless, intentional, willful, or wanton misconduct. Mot. J. Pleadings 5-11. Plaintiff filed his Response, Resp. (ECF No. 38), and Defendants filed their Reply. Reply (ECF No. 40). Therefore, the Motion is ripe for determination.

## Legal Standard

A motion for judgment on the pleadings under Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam) (internal citations omitted). The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion to dismiss under Rule 12(b)(6). *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010).

When deciding a 12(b)(6) motion for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). To survive a Rule 12(c) motion for judgment on the pleadings, therefore, a plaintiff's complaint must contain enough factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). This pleading standard does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

To obtain dismissal on a Rule 12(c) motion based on an affirmative defense, such as statutory immunity from suit, the "successful affirmative defense [must] appear [] clearly on the face of the pleadings." *Clemmer v. Irving Indep. Sch. Dist.*, 2015 WL 1757358, at *2 (N.D. Tex. Apr. 17, 2015) (quoting *Cochran v. Astrue*, 2011 WL 5604024, at *1 (N.D. Tex. Nov. 17, 2011) (Fitzwater, C.J.)). In other words, the defendant is entitled to dismissal under Rule 12(c) when "the plaintiff has pleaded [him]self out of court by admitting to all of the elements of the defense." *Id.* (cleaned up).

## Analysis

Defendants argue that section 74.155 bars all of Plaintiff's claims. They assert that all of the facts pleaded demonstrate that every "claim[] [is] based on alleged acts or omissions for which the Defendants are immune under 74.155(b)." Mot. J. Pleadings 9. Defendants also argue that Plaintiff failed to allege facts sufficient to establish reckless, intentional, willful, or wanton misconduct as required to state a claim for gross negligence. Plaintiff responds that Defendants failed to adequately plead the defense and fail to demonstrate the absence of issues of material facts. Resp. 8-13.

With respect to section 74.155, the Court initially notes that the statute is barely two years old, and as Plaintiff asserts—and Defendants do not dispute—"no appellate court has had occasion to examine [section 74.155]'s limits, applicability to a judgment on the pleadings proceeding, or constitutionality." Resp. 15. Indeed,

Plaintiff contends, Defendants' Motion is "the first of its kind." Resp. 15. Certainly, it presents legal questions of first impression.

A.

Section 74.155(b) of the Texas Civil Practice and Remedies Code provides that:

> Except in a case of reckless conduct or intentional, wilful, or wanton misconduct, a physician, health care provider, or first responder is not liable for an injury, including economic and noneconomic damages, or death arising from care, treatment, or failure to provide care or treatment relating to or impacted by a pandemic disease or a disaster declaration related to a pandemic disease if the physician, health care provider, or first responder proves by a preponderance of the evidence that:
>
> > (1) a pandemic disease or disaster declaration related to a pandemic disease was a producing cause of the care, treatment, or failure to provide care or treatment that allegedly caused the injury or death; or
> >
> > (2) the individual who suffered injury or death was diagnosed or reasonably suspected to be infected with a pandemic disease at the time of the care, treatment, or failure to provide care or treatment.

Tex. Civ. Prac. & Rem. Code § 74.155(b). This statute "allows a physician or health care provider a defense to pandemic-related liability." *Tex. Health Huguley, Inc. v. Jones*, 637 S.W.3d 202, 218 (Tex. App.—Fort Worth 2021, no pet.). A party who wishes to use this defense "must provide to a claimant specific facts that support an assertion under Subsection (b)(1) or (2)" within certain time limits. Tex. Civ. Prac. & Rem. Code § 74.155(g).

B.

Plaintiff argues that Defendants fail to meet the pleading requirements of section 74.155(g) because they did not allege "specific facts" to support their assertion of the affirmative defense. Resp. 8-11. As Defendants point out, "federal courts sitting in diversity apply state substantive law and federal procedural law." *Nat'l Liab. & Fire Ins. Co. v. R & R Marine, Inc.*, 756 F.3d 825, 834 (5th Cir. 2014) (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)). If a Federal Rule "is sufficiently broad to cause a direct collision with the state law or, implicitly, to control the issue before the court, . . . [the court] must apply the Federal Rule as long as it does not violate either the Constitution or the Rules Enabling Act." *Id.* at 835. "In determining whether the Rule covers a particular issue, [courts] look to the plain meaning of the Rule's language . . . [and] judicial interpretations of that language." *Id.* at 834-35.

Here, Texas law and the Federal Rules of Civil Procedure do not conflict. Rule 8 requires that "a party must affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c)(1). And, in the Fifth Circuit, a defendant must plead an affirmative defense with "enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced" to prevent unfair surprise. *LSREF2 Baron, L.L.C. v. Tauch*, 751 F.3d 394, 398 (5th Cir. 2014) (quoting *Rogers v. McDorman*, 521 F.3d 381, 385-86 (5th Cir. 2008)). Section 74.155's demand for "specific facts" does not demand any higher standard than the Federal Rules.

Defendants' amended answer includes sufficient specific facts to support their assertion of the affirmative defense that outline the pandemic conditions during Ms. Norman's residency at Skyline and the circumstances of her death. Among other things, Defendants allege:

> COVID-19 is a pandemic disease. Gubernatorial and Presidential declarations of disaster relating to COVID-19 were issued on March 13, 2020 and March 25, 2020, respectively. COVID-19 and the disaster declarations were substantial factors in the specific care and treatment Defendants provided (or allegedly failed to provide) to Plaintiff/Decedent Ella Norman (i.e., pandemic-specific testing, screening, protective measures, mitigation efforts, and similar strategies). In the absence of COVID-19 and the declarations, the pandemic specific care and treatment (which Plaintiff alleges to be Ella Norman's cause of death) would not have occurred. Accordingly, COVID-19 and the declarations were a substantial factor in bringing about Ella Norman's cause of death, and without which, harm to Ella Norman would not have occurred.
>
> . . . Plaintiff/Decedent Ella Norman was diagnosed with COVID-19 or reasonably suspected of being infected by COVID-19, a pandemic disease, at the time of the care or treatment provided (or allegedly not provided) by Defendants (i.e., pandemic-specific testing, screening, protective measures, mitigation efforts, and similar strategies) occurred. Moreover, Defendants evaluated all patients in relation to COVID-19 risk and exposure; Defendants implemented care plans specific to Ella Norman's condition in light of COVID-19; Defendants administered nursing care and treatment in light of COVID-19; Defendants modified Ella Norman's environment in light of COVID-19; Defendants created, followed and implemented new protocols and procedures in response to the COVID-19 pandemic; Defendants provided Ella Norman's care and treatment to prevent a COVID-19 infection; Defendants monitored and treated Ella Norman once she contracted COVID-19; Defendants reported changes in Ella Norman's condition and provided treatment once diagnosed with COVID-19; Defendants and its staff complied with COVID-19 and infectious disease regulations and guidelines; Defendants provided its staff with personal protective equipment and provided instruction on proper use in light of COVID-19.

Am. Answer 12-13. These facts provided Plaintiff fair notice of the defense, and that is all that is required.

Plaintiff asserts that an expert declaration is required for defenses to medical negligence claims, Resp. 11, but neither the Federal Rules nor section 74.155 requires the submission of evidence merely to assert the defense.

C.

1.

Plaintiff's medical negligence and corporate negligence claims are "ordinary" negligence claims that fall squarely with the provisions of section 74.155(b), which protect "physician[s], health care provider[s], or first responder[s]" from liability for injury or death arising from the care, treatment, or failure to provide care or treatment relating to or impacted by a "pandemic disease"—absent "reckless conduct or intentional, wilful, or wanton misconduct." Tex. Civ. Prac. & Rem. Code § 74.155(b).

Chapter 74 of the Texas Civil Practice and Remedies Code defines a "health care provider" as "any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care" and also includes "an officer, director, shareholder, member, partner, manager, owner, or affiliate of a health care provider or physician." Tex. Civ. Prac. & Rem. Code § 74.001(a)(12)(A), (B). Plaintiff pleaded that Defendants are "health care providers" and that they "managed, operated, supervised, and/or staffed" Skyline, a health care facility. Orig. Pet. 3. Accordingly,

10

the pleadings demonstrate that Defendants are "health care providers" entitled to the protection afforded by section 74.155.

Plaintiff also pleaded that Ms. Norman died on April 11, 2020, due to COVID-19. Orig. Pet. 5. And Defendants provided Ms. Norman's official death certificate, which lists the immediate cause of death as COVID-19.[1] App. Ex. A, at 1 (ECF No. 36-1). The parties do not dispute that COVID-19 is a "pandemic disease," as contemplated by section 74.155.[2] Thus, the pleadings establish that Ms. Norman died from a "pandemic disease," as required by section 74.155.

Accordingly, Plaintiff admitted all of the elements for Defendants to prevail on a defense under section 71.455 to Plaintiff's medical negligence and corporate negligence claims, and the Court should dismiss these claims.

2.

Plaintiff argues that, regardless of any bar from the PLPA, he pleads that Defendants engaged in "reckless conduct or intentional, wilful, or wanton

---

[1] The Court takes judicial notice of Ms. Norman's official death certificate. *United States v. Brocato*, 4 F.4th 296, 304 (5th Cir. 2021) (describing a death certificate as a document subject to judicial notice).

[2] The Court also takes judicial notice of the Texas Gubernatorial and Presidential declarations of disaster relating to COVID-19. *See* March 13, 2020 Proclamation by the Governor of the State of Texas, https://gov.texas.gov/uploads/files/press/DISASTER_covid19_disaster_proclamation_IMAGE_03-13-2020.pdf (last visited June 7, 2023); Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, 85 Fed. Reg. 15337 (Mar. 13, 2020), 2020 WL 1272563 [hereinafter Presidential Declaration]. The Presidential Declaration noted that, on March 11, 2020, the World Health Organization announced that the COVID-19 outbreak "can be characterized as a pandemic." Presidential Declaration, 85 Fed. Reg. at 15337.

misconduct," which is excepted from the immunity provided in section 74.155. Resp. 13-15. In his view, the type of "reckless conduct or intentional, wilful, or wanton misconduct" excepted by the statute is equivalent to gross negligence. Resp. 14. Defendants respond that Plaintiff misreads the phrase, and the exception requires "deliberate indifference," rather than "gross negligence," requiring a "somewhat 'stricter' standard." Reply 7 n.3.

Section 74.155 does not define the term "reckless conduct or intentional, wilful, or wanton misconduct." The Texas Supreme Court does not appear to have propounded an interpretation either. When no decision of a state's highest court addresses the issue, a federal court is forced to make an *Erie* guess, doing its best "to write the opinion the [state's] high court would if it had the chance."[3] *DeJoria v. Meghreb Petroleum Expl., S.A.*, 935 F.3d 381, 387-88 (5th Cir. 2019). The Court "may [] look to the state's intermediate appellate courts, unless [it has] reason to think the state's highest court would decide the issue differently." *Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018) (citing *In re Franchise Servs. of N. Am., Inc.*, 891 F.3d 198, 209-10 (5th Cir. 2018)).

---

[3] This Court is without the means to certify an unsettled question of state law to the Texas Supreme Court, as that court does not permit federal district courts to certify questions of Texas law. *See* Tex. R. App. P. 58.1(a) ("The Supreme Court of Texas may answer questions of law certified to it by any *federal appellate court* if the certifying court is presented with determinative questions of Texas law having no controlling Supreme Court precedent.") (emphasis added); *see also* Tex. Const. art. V, § 3-c(a) ("The supreme court and the court of criminal appeals have jurisdiction to answer questions of state law certified from a *federal appellate court*.") (emphasis added).

Texas appellate courts have analyzed many similarly worded—yet distinct—state statutes. For instance, Texas courts have found that "wilful and wanton negligence" is aligned with "gross negligence." *See, e.g.*, *Turner v. Franklin*, 325 S.W.3d 771, 780 (Tex. App.—Dallas 2010, pet. denied). Many courts also interpret "reckless disregard" as encompassing "gross negligence." *See Moncada v. Brown*, 202 S.W.3d 794, 799-800 (Tex. App.—San Antonio 2006, no pet.) (interpreting "wilfully or wantonly negligent, or performed with conscious indifference or *reckless disregard*" as "gross negligence" (emphasis added)); *cf. Elesawi v. State*, 2022 WL 1173019, at *4 (Tex. App.—Amarillo 2022, pet. denied). *But see Benish v. Grottie*, 281 S.W.3d 184, 192 (Tex. App.—Fort Worth 2009, pet. denied) (declining to define "wilful and wanton negligence" as "gross negligence" and noting that "conflicting definitions may exist").

In *Chrismon v. Brown*, the Fourteenth District Court of Appeals of Texas analyzed a statutory exception to immunity from liability for volunteers of charitable organizations. 246 S.W.3d 102, 106-07 (Tex. App.—Houston [14th Dist.] 2007, no pet.). However, that immunity did not apply to acts or omissions that were "wilfully negligent, or done with conscious indifference or reckless disregard for the safety of others." *Id.* at 106 (citing Tex. Civ. Prac. & Rem. Code § 84.007(a)). The court held that "in interpreting language from other statutes, the Texas Supreme Court, this court, and other courts of appeals have equated each of these three terms with gross negligence." *Id.* (collecting cases). In *Dunagan v. Coleman*, the Fifth District Court of Appeals of Texas reviewed the trial court's jury

instruction on reckless conduct after it had granted partial summary judgment on the plaintiff's claim of gross negligence. 427 S.W.3d 552, 557-58 (Tex. App.—Dallas 2014, no pet.). Without expressly deciding whether Texas law equates reckless conduct and gross negligence, it tacitly approved of *Chrismon*'s holding, stating that "although *Chrismon* adopts a gross negligence standard rather than a recklessness standard, the opinion discusses the fact that Texas case law has equated the term 'gross negligence' with 'recklessness.'" *Id.* at 557 (citing *Chrismon*, 246 S.W.3d at 107).

The Texas Supreme Court has, in other torts contexts, cited approvingly of the theory that reckless operation of an emergency vehicle entails "show[ing] that the operator has committed an act that the operator knew or should have known posed a high degree of risk of serious injury." *City of Amarillo v. Martin*, 971 S.W.2d 426, 430 (Tex. 1998) (first citing *Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 326 (Tex. 1993); and then citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 34, at 213-14 (5th ed. 1984)). When the Texas Legislature codified the definition of "gross negligence" in 2003, it included a subjective component where a plaintiff must show that "the defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others." Tex. Civ. Prac. & Rem. Code § 41.001(11). The language appears strikingly similar, and it appears that Texas encompasses a reckless standard into its definition of gross negligence.

14

Furthermore, it is an established principle of statutory construction that "[w]here possible, every word in a statute should be given meaning." *G.M. Trading Corp. v. C.I.R.*, 121 F.3d 977, 981 (5th Cir. 1997) (citing *Nalle v. Comm'r*, 997 F.2d 1134, 1139 (5th Cir. 1993)). When it enacted the PLPA, the Texas Legislature used a disjunctive "or" to except two types of conduct, that of "reckless conduct" or of "intentional, wilful, or wanton misconduct." Tex. Civ. Prac. & Rem. Code § 74.155(b). Relying on the Northern District's decision in *Wilson v. Dallas County*, 2014 WL 4261951, at \*12-13 (N.D. Tex. Aug. 29, 2014), and the Fifth Circuit's decision in *Doe v. Taylor Independent School District*, 15 F.3d 443, 453 (5th Cir. 1994), Defendants point out that courts in this Circuit have held the standards for "gross negligence" and "deliberate indifference" are distinct. While correct in their statement, Defendants provide no reason why the PLPA requires deliberate indifference—to the exclusion of gross negligence. Indeed, "deliberate indifference" may be covered under the latter provision of section 74.155's exception as deliberate indifference requires "unnecessary or wanton infliction of pain."[4] *O'Connor v. Edge*, 2020 WL 959794, at \*2 (N.D. Tex. Feb. 3, 2020) (Rutherford, J.) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)), *adopted by* 2020 WL 956275 (N.D. Tex. Feb. 26, 2020) (Lynn, C.J.). But the disjunctive exception's former provision specifically indicates that "reckless conduct" is also

---

[4] "Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight." *Alvarez v. City of Brownsville*, 9044 F.3d 392, 391 (5th Cir. 2018) (en banc).

15

precluded from the PLPA's immunity which, as discussed, includes grossly negligent behavior. Certainly, had the Texas Legislature intended to require *solely* the heightened standard, it could have said so expressly.

In view of Texas law and case interpretations, the Court should find that section 74.155 does not provide healthcare providers immunity for grossly negligent conduct; instead of, as Defendants suggest, only excepting conduct with some higher standard of culpability.

3.

Defendants further argue that, even if gross negligence is excepted from section 74.155 immunity, Plaintiffs "allege only general negligence" and fail to allege facts to satisfy any element of gross negligence. Reply 8.

Under Texas law, gross negligence is comprised of both objective and subjective elements. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012). To prevail on a gross negligence claim, Plaintiffs are required to show that:

> 1) when viewed objectively from the defendant's standpoint at the time of the event, the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and 2) the defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

*Id.*; *see* Tex. Civ. Prac. & Rem. Code § 41.001(11). Plaintiffs must objectively show that there was a likelihood of serious injury, "not a remote possibility or even a high probability of minor harm." *Id.* (first citing *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998); and then citing *Lee Lewis Constr., Inc. v. Harrison*,

70 S.W.3d 778, 785 (Tex. 2001)). Further, they must prove that not only are defendants aware of that risk, but that the "defendant's acts or omissions demonstrated indifference to the consequences of its acts." *Id.* (first citing *La.-Pac. Corp. v. Andrade*, 19 S.W.3d 245, 246-47 (Tex. 1999); and then citing *Wal-Mart Stores, Inc.*, 868 S.W.2d at 326).

Plaintiff alleges that Ms. Norman had several severe health issues prior to and during her residence at Skyline. Orig. Pet. 3. He also asserts that Skyline knew of Ms. Norman's specific health conditions, as Skyline created "Focus Plans" for each resident based on individualized needs of each resident. Orig. Pet. 4. Plaintiff states that he relied on the representations of Skyline that they could tend to and provide assessments of Ms. Norman to ensure that she was "safe and properly cared for at all relevant times," particularly in relation to the "increased risk and susceptibility to viruses created by [her] conditions." Orig. Pet. 3-4. The Defendants owed a duty of care and purportedly failed to properly monitor and attend to Ms. Norman, which led to her contracting COVID-19 and ultimately passing away. Orig. Pet. 4. Taken as true, as the Court must, the allegations plausibly support the inference that Skyline's alleged failure to adequately care for Ms. Norman, to train and educate staff on her needs, and to sufficiently supervise Ms. Norman during the pandemic would objectively cause serious injury or death considering the severity of her comorbidities. Plaintiff pleads Skyline had the requisite subjective awareness of the health conditions and potential risks involved with Ms. Norman's care through the "Focus Plans" constructed for each resident.

17

Plaintiff also pleads that Skyline was reckless with respect to Ms. Norman's health conditions during the outbreak of the pandemic. Orig. Pet. 4. They allegedly knew of all her comorbidities, including her advanced age and asthma, yet they ignored her fever for four days during a period in late March of 2020, when the newly discovered, deadly coronavirus was raging uncontrolled across the country and the world. Orig. Pet. 4-5. Plaintiff's allegations plausibly state that Defendants may have been grossly negligent with respect to the consequences of a lack of care for Ms. Norman. The Court should not dismiss Plaintiff's gross negligence claim at this early stage of the litigation.

### D.

In his response to the Motion, Plaintiff asserts that section 71.455 is unconstitutionally retroactive in violation of Article 1, Section 16 of the Texas Constitution, and should not bar his ordinary negligence claims. Resp. 15-23. Defendants rebut this argument by stating that section 74.155 is merely a "partial repeal of the right to bring claims under the wrongful death and survival statutes" such that a retroactivity analysis is inapplicable, or alternatively, if a *Robinson* retroactivity analysis is required, the law is constitutional. Reply 9-12.

The Texas Constitution prohibits any "bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts." Tex Const. art I, § 16. Texas's prohibition against retroactive laws "advances two fundamental objectives of [its] system of government: the protection of 'reasonable, settled expectations' and protection against 'abuses of legislative power.'" *Fire Prot. Svc.,*

18

*Inc. v. Survitec Survival Prods., Inc.*, 649 S.W.3d 197, 201 (Tex. 2022). But Texas has recognized that "[m]ost laws have some retroactive effect, though, because they often 'operate to change existing conditions.'" *Id.* (citing *Tex. Water Rights Comm'n v. Wright*, 464 S.W.2d 642, 648 (Tex. 1971)).

1.

Defendants argue that as section 74.155 acts as a "limited repeal of the rights created by the wrongful death and survival statutes," it should be given immediate effect under Texas law. Reply 10-11. Plaintiffs contend that the Court should apply the Texas Supreme Court's *Robinson* test to determine whether section 74.155 violates the Texas Constitution.

Defendants argue that section 74.155 is a partial repeal of the wrongful death and survival acts, stating that "[t]he general rule [] that when a statute is repealed without a savings clause limiting the effect of the repeal, the repeal of that statute is usually given immediate effect" should apply. *Quick v. City of Austin*, 7 S.W.3d 109, 128 (Tex. 1998) (citing *Knight v. Int'l Harvester Credit Corp.*, 627 S.W.2d 382, 384 (Tex. 1982)). In Defendants' view, at common law in Texas "there was no recognized cause of action for the wrongful death of another person," *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 644 (Tex. 2009), and the Texas Legislature abrogated this common law rule. *Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 344 (Tex. 1992); *see* Tex. Civ. Prac. & Rem. Code §§ 71.001-.012 (wrongful death), 71.021 (survival action). But there was no express repeal of the wrongful death and survival actions, and "[r]epeals by implication are disfavored" absent a "compelling

19

textual reason to conclude" a state law was a repeal. *Hegar v. Health Care Svc. Corp.*, 652 S.W.3d 39, 45 (Tex. 2022) (citations omitted).

Section 74.155 would be considered a repeal only if it is wholly inconsistent with previously enacted laws. *See Allied Fin. Co. of Bay City v. Falkner*, 397 S.W.2d 846, 847 (Tex. 1965) (per curiam); *Jessee v. De Shong*, 105 S.W. 1011, 1014 (Tex. Civ. App. 1907) ("To constitute a repeal by implication, there must be such repugnance or conflict between the positive and material provisions of the different acts (in hand) that they cannot stand together." (citation omitted)). "A legislative enactment covering a subject dealt with by an older law, but not repealing that law, should be harmonized whenever possible with its predecessor in such a manner as to give effect to both." *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990). Neither party points to any federal or Texas law that interprets a carve out of a statute as even a partial repeal that would remove the statute from Texas's analysis of retroactivity using the *Robinson* factor test, and this Court declines to undertake any such scrutiny as well. *See Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 55 (Tex. 2014) (noting that Texas has "never held that statutory causes of action are categorically beyond the constitutional protections from retroactive laws").

### 2.

Because there is "[n]o bright-line test for unconstitutional retroactivity," the Supreme Court of Texas applies a three-factor test to determine whether a retroactive law is unconstitutional. *Fire Prot. Svc., Inc.*, 18 F.4th at 804-05

(quoting *Robinson v. Crown Cork & Seal Co., Inc.*, 335 S.W.3d 126, 138 & n.63 (Tex. 2010)). The *Robinson* analysis requires Texas courts to review: (1) "the nature and strength of the public interest served by the statute as evidenced by the Legislature's factual findings," (2) "the nature of the prior right impaired by the statute," and (3) "the extent of the impairment." *Robinson*, 335 S.W.3d at 145.

The first *Robinson* factor reviews the nature and strength of the public interest. The PLPA was expressly enacted due to "widespread effect" of COVID-19 and the severe effects it had on physicians and health care providers such as stress on the system, shortage of staff and supplies, and unnecessary liability imposed by litigation. Act of June 14, 2021, *supra* § 4. It further provides that "while some settled expectations regarding claims to which [the PLPA] applies may be impaired by [the PLPA], [the PLPA] serves a compelling public interest in establishing certain procedures and standards for addressing potential claims against individuals and entities." *Id.* § 4(c). The Texas House Report notes that "[m]ost of these individuals and business have been making good faith efforts to comply with appropriate guidelines applicable to the pandemic." H.R. 87-26985, 87th Reg. Sess., at 1 (Tex. 2021), https://capitol.texas.gov/tlodocs/87R/analysis/pdf/ SB00006H.pdf#navpanes=0.

The scope of the PLPA encompasses a wide array of entities from universities to non-profit businesses, and section 74.155 specifically protects numerous medical and health care providers and entities in the state from litigation. The PLPA goes straight to the heart of difficulties that faced medical

providers during overwhelming responses to the COVID-19 pandemic and sought to lessen the burdens for negligence claims, only excepting claims related to "reckless conduct" or "intentional, wilful, or wanton misconduct." Tex. Civ. Prac. & Rem. Code § 74.155(b). The express findings of the Texas Legislature demonstrate a compelling interest to alleviate strain on those involved with the medical response to pandemics who seek to address widespread pandemic conditions in good faith.

Plaintiff's attempt to analogize this to the *Robinson* case mischaracterizes the extent of the holding. In *Robinson*, the Texas Legislature had limited corporations' successor liability for asbestos claims, and the Texas Supreme Court found that this limitation "was enacted to help only [Defendant] and no one else." *Robinson*, 335 S.W.3d at 149. The Texas Legislature failed to recognize the specific policy reasons or severity of the asbestos crisis in enacting the state law. *Id.* While the record in *Robinson* was limited in how the state law affected the public, the PLPA outlines these specific findings and essential policy concerns at play relating to the COVID-19 pandemic and its effects on the healthcare profession. Act of June 14, 2021, *supra* § 4 (noting that "the frequency and severity of such cases in this state have severely taxed the physicians and health care providers").

The second factor is the nature of the prior right. In Texas, when a claim is established as mature, it may be weighed in favor of the party seeking to claim unconstitutional retroactivity. *See Robinson*, 335 S.W.3d at 147-48. In *Robinson*, extensive discovery demonstrated that the plaintiff's claims had a "substantial

basis in fact." *Id.* at 148. However, in *Tenet Hospitals Ltd. v. Rivera*, "the sparse record before [the Supreme Court of Texas]" failed to provide any indication of the strength of [plaintiff's] claim." 445 S.W.3d 698, 708 (Tex. 2014). There, the "*type* of claim" was substantially established, but the "*strength* of [the] individual claim was unclear." *Id.* (emphasis added). Here, too, the type of claim is established, but the strength of Plaintiff's claims is unclear. Plaintiff's allegations merely provide facts sufficient to state a claim for gross negligence; they do not necessarily demonstrate that his gross negligence claim is particularly strong.

The final factor is the extent of the impairment of the prior right. The extent of impairment here is significant—but not so severe as to outweigh the other factors. The PLPA does not shield health care providers from *all* liability. Rather, it only prevents recovery from health care providers for their ordinary negligence with respect to the care, treatment, or failure to provide care or treatment, relating to a "pandemic disease." Tex. Civ. Prac. & Rem. Code § 74.155(b). Injured persons can still recover from health care providers for injury and death not related to a "pandemic disease" and for injury or death related to such a disease and caused by the provider's reckless conduct or intentional, wilful, or wanton misconduct. *Id.* Pandemics are rare events. And, as discussed above the COVID-19 pandemic posed particularly serious problems, especially in the early days of the pandemic and before the Texas Legislature enacted the PLPA. These problems included severe strain on the state's health care system brought on by a rapidly changing

understandings of the virus, as well as a lack of treatment options and shortages of medical supplies and trained personnel.

The *Robinson* analysis mirrors one done by a separate, albeit distinct, case from this Court in *Hogan v. Southern Methodist University*. 595 F. Supp. 3d 559, 568-72 (N.D. Tex. Mar. 29, 2022). In *Hogan*, the Court considered the *Robinson* factors in reviewing a separate section of the PLPA that barred claims against educational institutions, finding that it was valid. *Id.* at 568; *see* Tex. Civ. Prac. & Rem. Code § 148.004(b). There, too, the Court noted the weight of each of the *Robinson* factors and determined that a bar to claims against universities was not unconstitutionally retroactive under the Texas Constitution, noting that the Texas Supreme Court "balance[es] the notion that 'statutes are not to be set aside lightly.'" *Hogan*, 595 F. Supp. 3d at 569 (citing *Tenet Hosps. Ltd.*, 445 S.W.3d at 707). The Court should not find that Section 74.155 is unconstitutionally retroactive.

## Conclusion

For the reasons stated, the Magistrate Judge recommends the Court GRANT the Motion in part and DISMISS Plaintiff's ordinary negligence claims.

**SO RECOMMENDED.**

June 7, 2023.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Svcs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).